UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN RUTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:16-CV-3207-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 19. Attorney D. James Tree represents John Rutz (Plaintiff); Special Assistant United States Attorney Nancy A. Mishalanie represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on May 17, 2013, alleging disability since September 30, 2011, due to Myopathy, Hypotonia, Depression, ADHD, and Bi-

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . . - 1

Polar Disorder. Tr. 178, 184, 236. Plaintiff amended his alleged disability onset date to April 9, 2013, at the time of the administrative hearing. Tr. 39. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) M. J. Adams held a hearing on May 5, 2015, Tr. 36-60, and issued an unfavorable decision on June 9, 2015, Tr. 18-28. The Appeals Council denied Plaintiff's request for review on September 12, 2016. Tr. 1-6. The ALJ's June 2015 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on November 14, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

Plaintiff was born on February 24, 1980, and was 33 years old on the alleged onset date, April 9, 2013. Tr. 39. Plaintiff completed high school and one year of college. Tr. 237. He returned to college in September 2013 and, at the time of the administrative hearing, was continuing to work on his associate's degree in business management with a focus on marketing. Tr. 41. He was taking a normal load of college classes (15 credits), doing a majority of his coursework online while spending six hours a week on campus, and was halfway through the process of obtaining his degree. Tr. 41-42, 46-48.

Plaintiff's past work consists of jobs as a security guard, a dispatcher and a certified nurse's assistant. Tr. 43-45, 55-56, 237. Plaintiff's disability report indicates he stopped working on November 15, 2011, because of his conditions. Tr. 236. Plaintiff testified the main thing keeping him from being able to work is his social anxiety. Tr. 47. He explained he lacks the ability to relate to and get along with people. *Id*. Plaintiff additionally stated that panic attacks are an everyday issue. Tr. 49. He indicated he experiences overwhelming panic attacks three or four times a week. *Id*. With respect to physical issues, Plaintiff testified he has low muscle tone and could only lift 20 pounds, has difficulty with fine motor skills, and could stand no longer than 30 minutes at a time. Tr. 50.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 9, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 9, 2013, the amended alleged onset date. Tr. 20. At step two, the ALJ determined Plaintiff had the following severe impairments: congenital myopathy with bilateral foot deformities; obesity; affective disorders variously diagnosed as bipolar disorders and depression; anxiety disorders variously diagnosed as anxiety, social phobia and posttraumatic stress disorder (PTSD); and personality traits. Tr. 20. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light exertion level work, but with the following limitations: he could lift and carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for six hours and sit for six hours in an eight-hour workday; he could occasionally push/pull with his bilateral lower extremities, including in the operation of foot controls; he could frequently climb ramps and stairs but not climb ladders, ropes or scaffolds; he could frequently balance; he could occasionally stoop, kneel and crouch; he had no manipulative,

visual or communicative limitations; he would need to avoid concentrated exposure to hazardous machinery and working at unprotected heights; he could perform simple, routine tasks and follow short, simple instructions; he could do work that needs little or no judgment and could perform simple duties that could be learned on the job in a short period of less than 30 days; he could respond appropriately to supervision, but could not be required to do work in close coordination with coworkers where teamwork would be required; and he could deal with occasional changes in the work environment that would require only occasional exposure to or interaction with the general public. Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a dispatcher and nurse assistant. Tr. 26. At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of production assembler; packing line worker; and cleaner, housekeeping. Tr. 27-28. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 9, 2013, the alleged onset date, through the date of the ALJ's decision, June 9, 2015. Tr. 27-28.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) rejecting the medical opinions of Caryn Jackson, M.D., and Philip Barnard, Ph.D.; (2) failing to provide legally sufficient reasons for discrediting Plaintiff's symptom testimony; and (3) improperly discounting the lay witness statements of Plaintiff's mother, Rosie Rutz.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff first contends the ALJ erred by failing to provide legally sufficient reasons for rejecting the opinions of Drs. Jackson and Barnard. ECF No. 15 at 5-12. Plaintiff asserts the ALJ erred by instead according controlling weight to state agency nonexamining medical professionals regarding Plaintiff's limitations. *Id*.

In a disability proceeding, the courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding a nonexamining doctor's opinion "with nothing more" does not constitute substantial evidence). Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be ***based in part*** on the testimony of a nonexamining medical advisor. *Magallanes v. Bowen*, 881 F.2d 747, 751-755 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043.

The ALJ assigned "significant evidentiary weight" to the state agency assessments of Gordon Hale, M.D., Michael L. Brown, Ph.D., and John F.

Robinson, Ph.D. Tr. 25. These nonexamining medical professionals found Plaintiff was limited to light exertion level work with two to six hours of standing and/or walking[1] and six hours of sitting in an eight-hour workday, postural limitations and limitations in both lower extremities due to Plaintiff's myopathy and repeated foot surgeries, and moderate limitations with Plaintiff's ability to interact with the general public and coworkers/peers, Tr. 69-72, 95-97. The ALJ held that these functional assessments were largely consistent with Plaintiff's longitudinal treatment history, his performance on physical and mental status examinations and his documented daily activities. Tr. 25.

The ALJ accorded "little weight" to the assessments of Drs. Jackson and Barnard, finding they were inconsistent with Plaintiff's longitudinal treatment history, his performance on physical and mental status examinations and his documented daily activities and social functioning. Tr. 25.

Dr. Jackson, Plaintiff's treating physician from March 2013 to October 2014, Tr. 586, completed a physical functional evaluation form on June 7, 2013, which opined that Plaintiff would be limited to sedentary exertion level work, Tr. 537. On July 1, 2013, a psychiatric evaluation was completed. Tr. 453-456. The report indicated Plaintiff had recently been hospitalized for seven days after attempting suicide three times in a three-week period. Tr. 453. Plaintiff was placed on Depakote and reported he had "felt pretty good" since leaving the

---

[1]On July 31, 2013, Dr. Robinson found Plaintiff was limited to "2 hours" of standing and/or walking in an eight-hour workday, Tr. 69; however, on December 30, 2013, Dr. Hale opined Plaintiff would be limited to "about 6 hours" of standing and/or walking in an eight-hour workday. Tr. 95. The ALJ does not mention the difference between these credited opinions or specify why it was ultimately determined, inconsistent with Dr. Robinson's opinion, that Plaintiff had the RFC to stand and/or walk for six hours in an eight-hour workday.

hospital, but still struggled with focus and concentration. Tr. 453. Several months later, on November 19, 2014, Dr. Jackson opined Plaintiff would miss four or more days per month mainly due to his anxiety issues. Tr. 587.

Examiner Barnard completed a Psychological/Psychiatric Evaluation form on May 2, 2013. Tr. 530-534. At the time of the evaluation, Plaintiff was taking Depakote for his mental health symptoms. Tr. 530. Dr. Barnard opined that Plaintiff's depression and paranoid ideation would interfere with his ability to work on a daily basis to a moderate extent. Tr. 531. Dr. Barnard determined Plaintiff would have a marked limitation in his ability to communicate and perform effectively in a work setting and severe limitations with his abilities to complete a normal work day and work week without interruptions from psychologically based symptoms and to maintain appropriate behavior in a work setting. Tr. 532.

In rejecting the opinions of Drs. Jackson and Barnard, the ALJ first determined that their assessments and low GAF scores were inconsistent with "the longitudinal treatment history." Tr. 26. The Court notes that an ALJ has no obligation to credit or even consider GAF scores in the disability determination. *See* 65 Fed. Reg. 50746, 50764 65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."). In fact, the GAF scale is no longer included in the DSM-V. Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).[2] In any event, here, the ALJ fails to specifically describe what "longitudinal treatment" evidence specifically contradicted the opinions of Drs. Jackson and Barnard. *See Brown-*

---

[2]"It was recommended that the GAF be dropped from the DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

*Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding the agency must set forth reasoning behind its decisions in a way that allows for meaningful review). If the ALJ fails to specify his rationale, a reviewing court will be unable to review those reasons meaningfully without improperly "substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." *Brown-Hunter*, 806 F.3d at 492 quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). Because the ALJ failed to identify what specific "longitudinal treatment history" evidence contradicted the medical opinions of Drs. Jackson and Barnard, the Court finds this basis to discount their opinions is not properly supported.

The ALJ next held that the opinions of Drs. Jackson and Barnard were inconsistent with Plaintiff's performance on physical and mental status examinations. Tr. 25. Again, the ALJ does not identify what specific physical and mental status examinations contradict the opinions of Drs. Jackson and Barnard. In fact, it appears to the Court that Drs. Jackson and Barnard are the only acceptable medical sources to have examined Plaintiff during the relevant time period, and their opinions are not inconsistent with their examination reports. This was not a specific and legitimate reason to reject their opinions.

The ALJ next stated that Dr. Jackson's and Dr. Barnard's assessments were not consistent with Plaintiff's documented daily activities and social functioning. Tr. 25. The ALJ does not specify conflicting daily activities or social functioning other than to highlight Plaintiff started community college in 2013 and continued to pursue his degree. Tr. 25. Although Plaintiff was taking a normal load of college classes at the time of the administrative hearing (15 credits), he performed most of his coursework online and only spent six hours a week on campus. Tr. 41-42, 46-48. As asserted by Plaintiff, his ability to attend classes six hours a week does not conflict with the medical opinions of Drs. Jackson and Barnard. ECF No. 15 at 10.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 9

The ALJ also notes Plaintiff had increased depression due to relationship problems around the alleged onset date, but engaged in treatment and improved by mid-2013; he was no longer suicidal; and his mental status examinations were largely unremarkable. Tr. 25. At the time of Dr. Barnard's May 2, 2013 examination evaluation, Plaintiff was taking Depakote. Tr. 530. Consequently, marked and severe functional limitations were assessed by Dr. Barnard despite the fact that Plaintiff had been treated for his mental health symptoms. Tr. 532. The same is true with respect to Dr. Jackson's opinions. In fact, Dr. Jackson opined Plaintiff would miss four or more days per month due to anxiety issues more than a year after "mid-2013." Tr. 587. Furthermore, as argued by Plaintiff, the fact that Plaintiff had not attempted suicide since mid-2013 did not definitively demonstate that Plaintiff's mental health symptoms were any less than as concluded by Drs. Jackson and Barnard. The ALJ erred by rejecting the opinions of Drs. Jackson and Barnard on this basis as well.

The ALJ additionally discounted Dr. Jackson's November 2014 report because it was "equivocal"; specifically, she "suspected" Plaintiff may have to lie down during the day due to muscular fatigue and indicated Plaintiff's medications "may" cause sedation. Tr. 25, 586. As asserted by Plaintiff, ECF No. 15 at 11 n.2, even if these statements were ambiguous or equivocal, it would not affect, and is thus an insufficient basis to discount, Dr. Jackson's clear opinion that Plaintiff would miss four or may days per month due to anxiety. Tr. 587.

The ALJ also determined that since Dr. Jackson was merely a primary care physician, not an acceptable mental health source, she was not qualified to assess Plaintiff's psychological capacity. Tr. 25-26. Defendant explicitly did not rely on the ALJ's rationale in this regard. ECF No. 19 at 9. While the regulations generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist, 20 C.F.R. § 404.1527(d)(5); *see Holohan v. Massanari*, 246

F.3d 1195, 1202 n. 2 (9th Cir. 2001), Dr. Jackson, Plaintiff's treating physician from March 2013 to October 2014, Tr. 586, was fully qualified to opine regarding Plaintiff's mental health symptoms and associated limitations. This was not a proper basis to reject Dr. Jackson's opinions.

The Court finds the ALJ provided no valid basis, other than the conflicting opinions reflected in the assessments of the nonexamining state agency medical professionals, Tr. 25, 67-74, 95-98, for discounting the opinions of Drs. Jackson and Barnard. As indicated above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. The ALJ erred by relying completely on the nonexamining medical profession opinions in formulating Plaintiff's RFC; accordingly, the ALJ's assessment of Plaintiff's functioning is not supported by substantial record evidence in this case.

Although the evidence of record demonstrates Plaintiff suffers from severe impairments which adversely affect his ability to work, the Court is not convinced Plaintiff's impairments cause totally disabling limitations. However, Plaintiff's functioning is an administrative finding, dispositive of the case, which is reserved to the Commissioner and, by delegation of authority, to the ALJ. SSR 96-5p. It is the responsibility of the ALJ, not this Court, to assess Plaintiff's level of functioning. Therefore, Plaintiff's RFC must be redetermined, on remand, taking into consideration the opinions of the medical professionals noted above, as well as any additional or supplemental evidence relevant to Plaintiff's claim for disability benefits. This matter will be remanded for additional proceedings in order for the ALJ to further develop the record, take into consideration Plaintiff's physical and psychological impairments, and assess the limitations those impairments may have on Plaintiff's functionality.

///

## B. Plaintiff's Subjective Complaints

Plaintiff also contends the ALJ erred by improperly discrediting his symptom claims. ECF No. 15 at 12-18.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. Tr. 23. The ALJ listed the following reasons to discount Plaintiff's subjective complaints: (1) the objective medical evidence did not substantiate Plaintiff's allegations of disabling limitations; (2) treatment records reflect Plaintiff's symptoms improved with treatment; and (3) Plaintiff's independent daily activities and social interaction were inconsistent with his allegations of disabling functional limitations. Tr. 23-24.

While some of the reasons provided by the ALJ for discounting Plaintiff's testimony may be supported by the evidence of record, this matter must be remanded for additional proceedings in light of the ALJ's erroneous determination regarding the medical opinion evidence of record. Accordingly, on remand, the

ALJ shall also reconsider Plaintiff's statements and testimony and discuss what statements, if any, are not credible and what evidence undermines those statements.

**C.  Lay Witness Statement**

Plaintiff contends the ALJ further erred by improperly rejecting the lay witness statements of Plaintiff's mother, Rosie Rutz, Tr. 274-281.  ECF No. 15 at 18-20.

The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), citing 20 C.F.R. § 404.1513(e)(2).  "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague*, 812 F.2d at 1232.  The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ considered the statements of Ms. Rutz, found her observations similar to Plaintiff's subjective complaints, and thus assigned little weight to Ms. Rutz' statements "for the same reasons" as he determined that Plaintiff's statements were not entirely credible (i.e., longitudinal treatment history, performance on exam, and daily activities).  Tr. 26; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (indicating that third-party testimony can be rejected for the same reasons provided for rejecting the claimant's testimony).

As concluded above, this matter will be remanded for additional proceedings in light of the ALJ's erroneous determination regarding the medical opinion evidence of record.  In addition to reassessing Plaintiff's RFC on remand, the ALJ shall reevaluate Plaintiff's statements and testimony.  Accordingly, on remand, the ALJ shall also reconsider and reevaluate the lay witness statements of Rosie Rutz

and the medical record as a whole with respect to Plaintiff's limitations and functioning.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall revisit Plaintiff's RFC. The ALJ shall reconsider the opinions of Drs. Jackson and Barnard and all other medical evidence of record, reassess Plaintiff's statements and testimony, and reevaluate the statements of lay witness Rosie Rutz. The ALJ shall develop the record further by directing Plaintiff to undergo consultative physical and psychological examinations and/or by eliciting the testimony of a medical expert or experts at a new administrative hearing to assist the ALJ in formulating a new RFC determination. The ALJ shall obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED November 6, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE